UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LOCAL LEGENDS LLC d/b/a CHEAP ) <br> SEATS TAVERN 2, and DANIEL LEE ) <br> LONG, ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. 9:20-cv-4259-BHH <br><br> **Opinion and Order** |

This matter is before the Court on Defendant Daniel Lee Long's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), or as an exercise of the Court's discretion to decline jurisdiction pursuant to 28 U.S.C. § 2201. (ECF No. 9.) For the reasons set forth in this Order, the motion is denied.

## BACKGROUND

Scottsdale Insurance Company ("Scottsdale") brought this declaratory judgment action against Defendants Local Legends LLC, doing business as Cheap Seats Tavern 2 ("Tavern"), and Daniel Lee Long ("Long"), pursuant to 28 U.S.C. § 2201, to determine the parties' respective rights and obligations under a policy of insurance that Scottsdale issued to the Tavern, with regard to an underlying personal injury lawsuit brought by Long against the Tavern captioned *Daniel Lee Long v. Local Legends, LLC and Cheap Seats Restaurant Group, LLC*, Beaufort County Court of Common Pleas Case No. 2020-CP-0700247 ("Underlying Action").

On or about February 4, 2020, Long filed the Underlying Action against the Tavern

1

seeking damages for injuries he sustained in the early morning hours of February 6, 2017, when he was struck in the head by fellow patrons of the restaurant and bar. Specifically, Long alleges in the Underlying Action that he attended a Super Bowl party hosted at the Tavern on February 5, 2017, that the Tavern served alcoholic beverages to patrons Carlos Enrique Barrera ("Barrera") and an unknown male ("John Doe") to the point that they became visibly intoxicated, and that the Tavern continued to serve alcoholic beverages to Barrera and Doe while they were visibly intoxicated. (ECF No. 1-2 at 6–7.) Long further alleges that sometime after 2:00 a.m. on February 6, 2017, while he was in the outside bar area of the Tavern, Barrera struck him in the head with a beer bottle and Doe punched him in the head, causing him to suffer significant injuries and to become hospitalized. (*Id.* at 7.) Based on these allegations, Long asserts causes of action against the Tavern for: dram shop liability; negligence, recklessness, gross negligence; and negligent hiring, training, retention, and supervision. (*Id.* at 8–11.)

Scottsdale issued Policy No. CPS2483097 (the "Policy") to the Tavern for the period of June 1, 2016 to June 1, 2017, generally providing commercial general liability and liquor liability coverages subject to the terms, conditions, limitations, and exclusions of the Policy. (Compl. ¶ 4, ECF No. 1.) Scottsdale is presently providing a defense to the Tavern in the Underlying Action subject to a reservation of rights. (*Id.* ¶ 13.) Scottsdale filed the instant complaint for declaratory judgment on December 8, 2020. In the complaint, Scottsdale asserts this Court possesses jurisdiction over this matter based on 28 U.S.C. § 1332, because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000. (*Id.* ¶ 6.)

Scottsdale seeks a declaration regarding its defense and coverage obligations

2

under the Policy for the claims asserted against the Tavern in the Underlying Action. Specifically, Scottsdale contends that coverage for the allegations in the Underlying Action under the commercial general liability part of the Policy is subject to the "Liquor Liability Exclusion." (*Id.* ¶ 16.) Scottsdale further contends that coverage for the allegations in the Underlying Action under both the commercial general liability part and liquor liability part of the Policy is subject to the "Assault and/or Battery Exclusion." (*Id.* ¶ 18.)

Long filed a motion to dismiss for lack of subject matter jurisdiction and requested that the Court abstain from exercising jurisdiction on February 12, 2021. (ECF No. 9.) Scottsdale responded on March 5, 2021. (ECF No. 15.) The matter is ripe for disposition and the Court now issues the following ruling.

## **LEGAL STANDARDS**

**Subject Matter Jurisdiction**

When a party challenges the factual basis for a federal court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving the district court possesses subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). In considering a Rule 12(b)(1) motion to dismiss, the district court is to regard the pleadings as mere evidence on the issue of subject matter jurisdiction and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment. *Id.* (citing *Adams*, 697 F.2d at 1219; *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy

3

within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a)(1).

**Discretionary Jurisdiction Over Declaratory Judgment Actions**

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). Declaratory judgment actions to ascertain liability coverage typically involve a separate proceeding, often in state court, by a tort plaintiff against the insured defendant. Federal courts have not held that such declaratory judgment actions inherently create undue entanglement with the underlying state tort actions. "Such a rule would . . . be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that

4

situation." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994). Moreover, "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Rather, the Court considers four factors ("*Nautilus* factors") in deciding whether to exercise its discretionary jurisdiction or to abstain:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"; and (iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing"— that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Nautilus*, 15 F.3d at 377) (alterations omitted). "The critical question . . . is whether–on the facts of this case–the additional considerations of federalism, efficiency, and comity . . . are sufficiently compelling to justify a refusal to exercise jurisdiction, despite the obvious utility of the declaratory relief sought." *Nautilus*, 15 F.3d at 377.

## DISCUSSION

### A. Subject Matter Jurisdiction

Though he cites Rule 12(b)(1) as the basis for his motion to dismiss, Long does not actually contest the Court's jurisdiction over this matter. (*See* ECF Nos. 9, 9-1.) He does not challenge the fact that complete diversity is present, that the amount in controversy requirement is satisfied, or that Scottsdale's complaint falls within the jurisdictional bounds of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). (*Id.*) Rather, Long argues that the Court should abstain from exercising jurisdiction under the

*Nautilus* factors. (*See id.*) The Court finds that Scottsdale has met is burden to demonstrate that the Court possesses jurisdiction over this matter. (*See* ECF Nos. 1 & 15.) Accordingly, to the extent Long's motion to dismiss is premised on a supposed lack of subject matter jurisdiction, the motion is denied.

### B. Discretionary Abstention

In his memorandum, Long argues that this Court should abstain from exercising jurisdiction over this declaratory judgment action on the grounds that (1) the factual issues in this case can be more efficiently resolved in state court, (2) if this Court were to undertake to resolve those factual issues in the instant case it would unnecessarily entangle itself with the state court, and (3) the state court has a significant interest in resolving the legal issues presented in this case. (*See* ECF No. 9-1 at 3–4.) For the following reasons, these arguments are unavailing.

Long fails to identify the overlapping issues of fact that would supposedly be more efficiently resolved in state court. Under South Carolina law, "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint." *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted). Thus, the Court need not decide whatever factual disputes Long vaguely references in order to decide the coverage issues presented here and there is no real concern of unnecessary entanglement with the state court proceedings. *See Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) ("[T]he duty-to-defend question in this case will not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the underlying plaintiff] has alleged in the state court action with the language of the

[insurer's] policy.")

Moreover, the Court finds that the state court is not in a better position to resolve the issues presented here regarding Scottsdale's defense obligations, and cannot do so more efficiently, because these issues are not before the state court and Scottsdale is not a party to the Underlying Action. *See Travelers Cas. Co. of Connecticut v. Legree*, No. 1:12-CV-2548-JMC, 2013 WL 3833045, at *4 (D.S.C. July 23, 2013) ("As noted, the question before the state court in the Underlying Actions is the potential liability of [the insured] in regard to the accident. [The insurer] is not a party in the Underlying Actions. Here, the issue is the legal relationship between [the insured] and [the insurer]. Therefore, as these matters are not pending before the state court, there is no concern of the state court resolving the issues more efficiently or of significant entanglement between the actions.")

Long cites *Pennsylvania Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc.*, No. 4:04-CV-1576-RBH, 2006 WL 569589, at *8 (D.S.C. Mar. 6, 2006), for the proposition that the Court's exercise of jurisdiction over this matter would result in unnecessary entanglement with the Underlying Action. (ECF No. 9-1 at 3.) In *Ely Wall*, Judge Harwell declined to exercise jurisdiction because he found (1) that South Carolina had "an extremely strong interest" in deciding the definition of an "occurrence" in the context of a construction defect claim where the South Carolina Supreme Court was contemporaneously grappling with that very issue, (2) that it would be more efficient to resolve all of the operative issues in a single controversy in a single court system, and (3) that there was a real risk that factual questions presented in the eleven underlying state court actions were substantially intertwined with the insurance coverage questions presented in the federal declaratory

7

judgment action and therefore a real risk of unnecessary entanglement. 2006 WL 569589, at *3–*9.

In contrast, this case does not involve complex factual or legal issues that ought to be resolved by a South Carolina state court. Unlike the definition of "occurrence" in the construction defect context, the application of assault and battery exclusions under South Carolina law has been well-settled for decades, since *Sphere Drake Insurance Co. v. Litchfield*, 438 S.E.2d 275, 277 (S.C. Ct. App. 1993) ("We find the exclusionary clause unambiguously applies to the claim at issue here. In readily understandable language, it excludes claims arising out of assault and battery, no matter what the cause."). *See Oceola Dev. & Constr., LLP v. Int'l Ins. Co. of Hannover, PLC*, No. 2:19-CV-0739-DCN, 2020 WL 1677539, at *4 (D.S.C. Apr. 6, 2020) ("Several courts in this district, applying South Carolina law, have relied on *Sphere Drake* to find that negligence claims fall within intentional injury exclusions where the underlying injury results from an intentional act." (collecting cases)). Federal courts in the District of South Carolina have routinely considered insurers' defense obligations in the context of assault and battery exclusions—including in the specific context of dram shop/liquor liability claims. *See, e.g.*, *Scottsdale Ins. Co. v. GS Thadius LLC*, 328 F. Supp. 3d 527, 538 (D.S.C. 2018), *aff'd sub nom. Scottsdale Ins. Co. v. Acosta*, 792 F. App'x 268 (4th Cir. 2020) (stating, in the context of a parking lot brawl, "[t]he allegations and alleged damages in the Underlying Lawsuit are excluded from coverage by the Policies' Assault and/or Battery Exclusions which apply to the CGL and Liquor Liability forms"). Accordingly, the Court finds that retaining jurisdiction over this case will not result in unnecessary entanglement with the state court presiding over the Underlying Action.

With respect to Long's assertion that S.C. Code § 61-2-145 demonstrates that South Carolina has a strong interest in its state courts deciding the issues presented here (*see* ECF No. 9-1 at 4), the assertion is without merit. Long contends that the purpose of this law was to prevent uninsured losses resulting from establishments that serve alcohol, that Scottsdale's preferred interpretation of the Liquor Liability Exclusion would "essentially make the Liquor Liability Coverage within the Policy illusory," and that South Carolina's public policy "requires that this exclusion be voided." (*Id.*) Section 61-2-145, which requires alcohol permit holders that serve alcohol for consumption on their premises after 5:00 p.m. to maintain at least $1,000,000 in coverage under a liquor liability insurance policy or a general liability policy with a liquor liability endorsement, went into effect July 1, 2017, thirteen months after the effective date of the Policy and one month after the Policy's expiration. Long's arguments are insufficient to show that South Carolina has a significant interest in its state courts deciding this case such that this Court should abstain from exercising jurisdiction. This case involves routine interpretation of an insurance policy and application of that policy to straightforward allegations in an underlying tort suit. Accordingly, the first *Nautilus* factor weighs in favor of retained jurisdiction.

Finally, Long appears to concede that this action is not being used as a device for "procedural fencing," as he makes no reference to this *Nautilus* factor except to cite it as one among other factors in the relevant abstention analysis. (*See* ECF No. 9-1 at 3.) The Court finds that there is no indication of procedural fencing here. In conclusion, the Court finds that bedrock principles of federalism, efficiency, and comity do not counsel toward abdicating jurisdiction under the circumstances and the motion to dismiss on this basis is

denied. *See Nautilus*, 15 F.3d at 375–76 ("[W]e have frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought." (citations omitted)).

## **CONCLUSION**

For the reasons set forth above, Defendant Daniel Lee Long's motion to dismiss or to abstain from jurisdiction (ECF No. 9) is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 13, 2021
Charleston, South Carolina